**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARVIN LOUIS LOWERY JR., | ) Case No. CV 18-9644-R (JPR) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER DISMISSING COMPLAINT WITH |
| | ) LEAVE TO AMEND |
| CITY OF LOS ANGELES et al., | ) |
| | ) |
| Defendants. | ) |

On November 15, 2018, Plaintiff filed pro se a civil-rights action under 42 U.S.C. § 1983. He was subsequently granted leave to proceed in forma pauperis. His claims arise from a warrantless misdemeanor arrest at the Westwood branch of the Los Angeles Public Library on June 21, 2018.

After screening the Complaint under 28 U.S.C. § 1915(e)(2), the Court finds that its allegations fail to state a claim upon which relief might be granted. Although the Court is skeptical that Plaintiff can state an actionable claim under § 1983, the Complaint is dismissed with leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (holding that

pro se litigant must be given leave to amend complaint unless it is absolutely clear that deficiencies cannot be cured).  If Plaintiff desires to pursue any of his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed below.

## ALLEGATIONS OF THE COMPLAINT

At about 12:30 p.m. on Thursday, June 21, 2018, Plaintiff "was sitting at the border of the general section and the children's section" in the Westwood branch of the Los Angeles Public Library.  (Compl. at 5-6.)  The library has a posted warning that patrons who engage in disruptive behavior, do not follow rules, or do not leave the library when asked "will be subject to arrest and prosecution" under Penal Code section 602.1(b).[1]  (Id., Exs. B & C; see also Compl. at 4, 7.) Plaintiff "frequented th[e] [Westwood branch] library often and incurred minimal issue[s]" with staff and a "newly contracted" security company.  (Compl. at 5-6.)

"With a certain sensitivity" for "other patron[]s," Plaintiff began to "engage[] with [his] daily audible ruminations at a hushed tone."  (Id. at 6.)[2]  "For some reason," that conduct

_____

[1]  That statute provides in relevant part that anyone who "intentionally interferes with any lawful business carried on by the employees of a public agency open to the public," by "obstructing or intimidating" those present or attempting to transact business with the agency, "and who refuses to leave the premises" upon request of an agency manager or supervisor or a peace officer is guilty of a misdemeanor.  See § 602.1(b).

[2]  Plaintiff suffers from unspecified "extreme mental issues" that cause "psychotic outbursts" and for which he takes "psychotropic drug[s]," including Risperdal.  (See Compl. at 6-7.) He does not specifically allege that his "daily audible

2

"aroused the attention of one of the librarians," who approached Plaintiff and warned him that he could not talk on his cell phone. (Id.) Plaintiff has "never been given" that librarian's name (id.) but appears to identify her later as nondefendant Christy Carr (see id. at 8, 15). He "informed her that [he] was not on [his] cell phone" and "questioned her admonishment" by stating that his "tone was at an appropriate level considering where [he] was sitting." (Id. at 6.) The librarian stated that "phone calls were not allowed to be taken within the library" and "went back to her station." (Id.)

Plaintiff, "[s]lightly agitated," "continued with [his] audible ruminations." (Id.) "As a coping mechanism," he pulled out a needle and thread and "began to sew [his] newly acquired Levi's [t]rucker [j]acket." (Id.) He "continued to sew quietly in the corner" until Los Angeles Police Department officers arrived. (Id.) He apparently continued to ruminate audibly while sewing. (See id.)

The "admonishing librarian," evidently accompanied by officers, "came to [Plaintiff's] table" and "informed" him that he "was not allowed to continue to patron [sic]" the library "due to ignoring their policy on no phone calls." (Id.) He "informed" the officers of "what [he has] written previously."[3] (Id.) The officers "talked to the librarian near her station" as

---

ruminations" resulted from any mental-health problem, however.

[3] Plaintiff does not specifically allege what he told the officers (see Compl. at 6), but the Court infers that he denied he had been talking on a cell phone and may have said other things.

Plaintiff "watched from afar." (Id.) They then returned and "inform[ed]" him that "if [he] continued to refuse to leave," he would be "put under citizen's arrest and escorted out of the building."[4] (Id.) He "subsequently refused," and the officers told him to "pack his things." (Id.) After he had finished packing, the librarian "came over again and stated that [he] was not allowed to continue patron[iz]ing the library that day," and the LAPD officers "informed [him] again that if [he] refused to leave [he]'d be arrested for trespassing." (Id.)

Plaintiff "again refused" to leave, "was put in handcuffs[,] and [was] escorted outside." (Id.)[5] He was taken to a local police station and detained before being "issued a ticket for the misdemeanor of [t]respassing" in violation of Penal Code section "602(q)."[6] (Id.; see also id., Ex. A.) Plaintiff was

---

[4] Plaintiff does not allege that he was asked to leave on any previous occasion (see generally Compl. at 5-16) and contends that the library's suspension letter stating otherwise is "fraudulent" (see id. at 8 & Ex. E).

[5] Plaintiff characterizes the incident as a citizen's arrest (see, e.g., Compl. at 6) by Carr or some other librarian (see id. at 7), but it is unclear who actually arrested him and whether that person was a police officer (compare id. at 6 (officers warned him of possibility of trespassing arrest, and he was put in handcuffs when he refused to leave), with id. at 8 (Complaint based on librarian's citizen's arrest)). The citation he was issued is largely illegible and only partially filled out, but it appears to list a "Ruiz" in a space for the name of the "[a]rresting or [c]iting [o]fficer." (See id., Ex. A.) A space below that for the "[n]ame of [a]rresting [o]fficer, if different from [c]iting [o]fficer," has been left blank. (See id.)

[6] That statute provides in relevant part that anyone who "refus[es] or fail[s] to leave a public building of a public agency" upon request by a "guard, watchperson, or custodian" during hours when the building is normally closed is guilty of misdemeanor

4

traumatized by the experience and "consider[s] it a blessing that
[he] was not hospitalized for a sixth time with as psychotic as
[he] was." (Compl. at 7.) He does not allege any physical
trauma or discomfort from his arrest, handcuffing, or detention.
(<u>See generally</u> <u>id.</u> at 6-15.)

On an unspecified date, Plaintiff attempted to appear in
court for the trespassing violation. (<u>Id.</u> at 8; <u>see also</u> <u>id.</u>,
Ex. A (citation with date of notice to appear in court
illegible).) But he couldn't find his name on the docket and
discovered later that the city attorney had decided not to file a
case against him. (Compl. at 8.) "The woman" who gave him that
information, apparently an employee of the city attorney's
office, also "implied that it was in [his] best interest" to
"avoid that library." (<u>Id.</u>)

On August 6, 2018, Plaintiff filed suit in Los Angeles
County Superior Court against the City of Los Angeles and its
public library, bringing claims of false arrest and imprisonment
arising from the June 21, 2018 incident. (<u>See, e.g.</u>, Compl., Ex.
M.) That suit evidently remains pending, <u>see</u> Online Servs.,
Super. Ct. of Cal., Cnty. of L.A., http://www.lacourt.org/
casesummary/ui/index.aspx?casetype=civil (search for case number
BC716638) (last visited Dec. 18, 2018), although Plaintiff
appears to believe it has been dismissed (<u>see</u> Compl., Ex. N at 52
(alleging that on Oct. 10, 2018, state-court judge sustained
City's demurrer and dismissed case without leave to amend).

---

trespassing "if the surrounding circumstances would indicate to a
reasonable person that [the accused] has no apparent lawful
business to pursue." Cal. Penal Code § 602(q).

Despite the unidentified woman's advice, Plaintiff "attempted to patron [sic]" the Westwood branch library on August 16, 2018, and "was summarily turned away" by Carr and a security guard. (Compl. at 8.) They and another "unnamed librarian" gave him a "[s]uspension letter," which contained incorrect or "fraudulent" information. (Id.; see also id., Ex. E.) More specifically, the letter, dated July 17, 2018, asserted that an unidentified library patron, apparently later identified as Plaintiff, had directed threats and profanity at library staff and patrons on May 4 and 17, 2018, and then had refused to leave. (See id., Ex. E at 1.)[7] The letter suspended the person's library privileges until October 18, 2018. (See id. at 2.) The letter does not contain Plaintiff's name or any other identifying information, nor does it mention the June 21, 2018 incident. (See generally id.)

Plaintiff was "escorted" out of the library by the LAPD shortly after being presented with the letter. (Compl. at 8.) He does not allege whether he was detained or cited for or charged with any Penal Code violation at that time. (Id.) Evidently later that same day, he emailed nondefendant City Attorney Mike Feuer to "inform[] the City as to what was transpiring at this rogue library" but received no immediate response. (Id.; see also id., Ex. D at 24 (email from Plaintiff to Feuer regarding civil case and suspension letter), 27 (email from Plaintiff to Feuer regarding suspension letter, "pending

---

[7] For nonconsecutively paginated documents, the Court uses the pagination generated by its Case Management/Electronic Case Filing System.

litigation," and Plaintiff's intent to visit library again when it opened).)

Plaintiff went to the library again at about 9:30 a.m. on August 17, 2018; "[a]gain [the] LAPD was called," and he was escorted out at about 12:45 p.m. (Compl. at 8-9.) He does not allege whether he was asked to leave by anyone or if he was detained by the LAPD, but he was issued a 24-hour trespassing warning under Los Angeles Municipal Code § 41.24(d).[8] (Id. at 9 & Ex. G.) He again emailed Feuer (Compl. at 9 & Ex. D at 30) but apparently received no response. On Saturday, August 18, 2018, at about 3 p.m., "after the 24 hours had passed," Plaintiff again arrived at the Westwood branch library and "was escorted out" by the LAPD. (Compl. at 9.) "The librarians continued to reference the [f]raudulent letter to state why [he] was excluded from the library." (Id.) He does not allege how long he was at the library or what he was doing or intended to do there. This time, Plaintiff "left without issue" and "sent a final email" to Feuer. (Id.; see also id., Ex. D at 33. But see id., Ex. D. at 34 (Aug. 23, 2018 email to Feuer complaining that LAPD officer had warned Plaintiff that he would be arrested for trespassing if he returned to Westwood branch library).) The Complaint does not allege specific facts as to any response to those emails. (See

---

[8] That provision authorizes the arrest of anyone who enters or is present at "private property open to the general public" within 24 hours of having been advised "to leave and not return" and warned by the owner or his agent of the possibility of arrest for noncompliance. L.A. Mun. Code § 41.24(d).

generally id. at 5-16.)[9]

Plaintiff sues the City of Los Angeles and the Los Angeles Public Library. (Compl. at 1, 4-5.) He does not name any individuals as Defendants. (See id.) He brings causes of action for false arrest under the Fourth Amendment (id. at 12-13), "[f]alse [i]mprisonment" (id. at 13),[10] and a state-law claim for "[m]ental [a]nguish" (id. at 13-14). His claims apparently arise only from the June 21, 2018 arrest and detention and not the suspension letter or any later removal from the library premises. (See, e.g., id. at 7 ("[The major aspect of this complaint is the basis behind that librarian's 'Citizen's Arrest [on June 21, 2018].'"); see also generally id. at 4-6, 13-14.) He seeks $250,000 in damages and the release of various government

_____

[9] On August 28, 2018, Deputy City Attorney Matthew McAleer sent Plaintiff a "meet and confer" email informing him that the City intended to file a demurrer to his lawsuit and asking him to voluntarily dismiss his case. (See Compl., Ex. L.) Plaintiff indicates that he received no response to the "7 emails" he sent to Feuer and that he "lost access to the email [address]" where McAleer sent the "meet and confer" email. (See Compl., Ex. D at 21.)

[10] Plaintiff's second cause of action does not specifically allege any constitutional deprivation, and the cases it cites do not appear to be relevant to any § 1983 claim; one is an FTCA case applying New York law, and the other is a Puerto Rico Supreme Court case applying Puerto Rico law. (See Compl. at 11, 13 (citing Ayala v. San Juan Racing Corp., 12 P.R. Offic. Trans. 1012, 1021 (1982), and Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).) False imprisonment is a state-law tort. See Slama v. City of Madera, No. 1:08-cv-810-AWI GSA., 2008 WL 5246006, at *2 (E.D. Cal. Dec. 17, 2008); Lyons v. Fire Ins. Exch., 161 Cal. App. 4th 880, 888 (2008) (listing elements of tortious false imprisonment under California law). But even liberally construed as a Fourth Amendment unreasonable-seizure claim, see Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008), it fails for the reasons discussed below.

documents under the Freedom of Information Act, 5 U.S.C. § 552, and certain provisions of the California Public Records Act, Government Code sections 6250-70 & 6275-76.48. (<u>See, e.g.</u>, Compl. at 14-15.)

**STANDARD OF REVIEW**

A complaint may be dismissed as a matter of law for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 622 F.3d 1035, 1041 (9th Cir. 2010) (as amended) (citation omitted); <u>accord</u> <u>O'Neal v. Price</u>, 531 F.3d 1146, 1151 (9th Cir. 2008). In considering whether a complaint states a claim, a court must generally accept as true all the factual allegations in it. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Hamilton v. Brown</u>, 630 F.3d 889, 892-93 (9th Cir. 2011). The court need not accept as true, however, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted); <u>see also</u> <u>Shelton v. Chorley</u>, 487 F. App'x 388, 389 (9th Cir. 2012) (finding that district court properly dismissed civil-rights claim when plaintiff's "conclusory allegations" did not support it). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>Yagman v. Garcetti</u>, 852 F.3d 859, 863 (9th Cir. 2017). A claim is facially plausible when it "allows the court to draw the reasonable

9

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

## DISCUSSION

## I.   The Complaint Appears to Be Duplicative of Plaintiff's State-Court Lawsuit

The Complaint is likely not properly heard by this Court because it is duplicative of Plaintiff's pending state case. A suit is duplicative if "the claims, parties, and available relief do not significantly differ between the two actions." Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 689 (9th Cir. 2007) (citation omitted), overruled on other grounds by Taylor v. Sturgell, 553 U.S. 880, 904 (2008). Plaintiff's state-court lawsuit evidently also sues the City and its library for false arrest and false imprisonment based on the events of June 21, 2018. (See, e.g., Compl., Ex. M at 48.) It appears that both actions seek only monetary damages. (See Compl. at 14 & Ex. N at 53.) It is unclear whether Plaintiff sued on any federal legal theories in his state case (see generally Compl., Ex. M), but he has not alleged any reason why he could not have done so, and none is apparent to the Court. The Complaint thus appears to be duplicative of Plaintiff's pending state case.

In the federal court system, "the general principle is to avoid duplicative litigation." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). A federal

10

court may decline to exercise jurisdiction over a case when a concurrent, duplicative state case is pending. See id. at 818. Although Colorado River abstention is disfavored in § 1983 cases, see Tovar v. Billmeyer, 609 F.2d 1291, 1294 (9th Cir. 1979), the Ninth Circuit "has not established a categorical prohibition" against it, see Jacobo v. L.A. Cnty., No. CV 11-7212-GW(SSx), 2012 WL 13012480, at *4 (C.D. Cal. Feb. 16, 2012). Abstention under Younger v. Harris, 401 U.S. 37, 41 (1971), may also be appropriate when a § 1983 plaintiff has a concurrent state case arising from the same conduct. See Gilbertson v. Albright, 381 F.3d 965, 979-80 (9th Cir. 2004) (en banc).

Here, the Court need not decide whether any of those doctrines apply because, as discussed below, the Complaint does not state any constitutional claim. See Wall v. Arend, No. C17-5453 BHS, 2017 WL 3534577, at *3 (W.D. Wash. Aug. 17, 2017) (when plaintiff had not yet stated cognizable § 1983 claim, court could dismiss pleading with leave to amend without "conclusively decid[ing]" whether abstention was warranted). In the event Plaintiff is able to adequately plead a constitutional deprivation in an amended pleading, the Court may abstain from considering it pending resolution of his state-court case. See Los Altos El Granada Inv'rs v. City of Capitola, 583 F.3d 674, 689-90 (9th Cir. 2009).

Plaintiff is further warned that the Rooker-Feldman[11] line of cases would bar this Court from hearing any de facto appeal of

---

[11]   See Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

11

a state-court judgment.[12]  "A de facto appeal exists when a
federal plaintiff asserts as a legal wrong an allegedly erroneous
decision by a state court, and seeks relief from a state court
judgment based on that decision."  Bell v. City of Boise, 709
F.3d 890, 897 (9th Cir. 2013) (citation omitted).  If the action
contains a de facto appeal, a district court is barred from
deciding not only the issues decided by the state court but also
any other issues that are "inextricably intertwined" with the
state court's decision.  Id.  Rooker-Feldman applies even when
the challenge to the state court's actions involves federal
constitutional issues.  See Dubinka v. Judges of Superior Court,
23 F.3d 218, 221 (9th Cir. 1994).  Accordingly, should the state
court decide Plaintiff's case and should he thereafter elect to
file an amended pleading, he must allege facts demonstrating that
this action is not barred by Rooker-Feldman.

**II.  The Complaint Does Not State Any § 1983 Claim**

Plaintiff seeks redress under the Fourth Amendment on
theories of false arrest and — construed liberally — unlawful
detention, evidently based on the conduct of Carr or whichever
librarian or police officers effectuated his June 21, 2018 arrest
and subsequent detention by the LAPD.  (See, e.g., Compl. at 5-8,
12-13.)

---

[12]  Plaintiff attached to his Complaint a complaint he
apparently submitted to the Commission on Judicial Performance
asserting that the superior court was wrong to sustain the City's
demurrer in his state-court lawsuit.  (See Compl., Ex. N.)

A.   Legal Standards

   1.   Fourth Amendment

An arrest without probable cause violates the Fourth
Amendment and gives rise to a claim for damages under § 1983.
See, e.g., Rosenbaum v. Washoe Cnty., 663 F.3d 1071, 1076 (9th
Cir. 2011); Dubner v. City & Cnty. of S.F., 266 F.3d 959, 964
(9th Cir. 2001). "Probable cause to arrest exists when officers
have knowledge or reasonably trustworthy information sufficient
to lead a person of reasonable caution to believe that an offense
has been or is being committed by the person being arrested."
Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir.
2009) (citation omitted). Probable cause is determined based on
the totality of circumstances known to the arresting officers at
the time of arrest.  Illinois v. Gates, 462 U.S. 213, 238 (1983).
Because probable cause is an objective inquiry, the arresting
officer's "subjective reason for making the arrest" does not
matter; a public, warrantless arrest comports with the Fourth
Amendment so long as there was probable cause for a reasonable
officer to arrest the suspect for some crime, which need not be
the actual offense charged or the one articulated by the
arresting officers.  Devenpeck v. Alford, 543 U.S. 146, 153-54
(2004); see also Arpin v. Santa Clara Valley Transp. Agency, 261
F.3d 912, 924 (9th Cir. 2001) (warrantless misdemeanor citizen's
arrest requires probable cause).  An officer may not accept
delivery of a person following a citizen's arrest without
"independently investigat[ing]" the claims of the citizen
witness.  Arpin, 261 F.3d at 924-25.

The Fourth Amendment governs a claim for unlawful detention

13

"even beyond the start of legal process." Manuel v. City of
Joliet, 137 S. Ct. 911, 920 (2017).  To raise such a claim, a
plaintiff must show that the officer violated his constitutional
rights by detaining or arresting him without probable cause.  Id.
at 918; Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990).

Any Fourth Amendment claim for unlawful detention, like any
claim for false arrest, thus depends on an absence of probable
cause.  See Cabrera v. City of Huntington Park, 159 F.3d 374, 380
(9th Cir. 1998) (per curiam).  But a prosecutor's subsequent
decision to dismiss charges or not to file them at all does not
by itself invalidate the legitimacy of an arrest; indeed, a
lawful arrest contemporaneously supported by probable cause
generally remains so regardless of subsequent developments in the
case.  See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979);
Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)
(as amended).

2.  Municipal liability

Plaintiff sues only the City and the Library.  (See, e.g.,
Compl. at 1, 4-5.)  Municipalities and local governments are
considered "persons" under § 1983 and therefore may be liable for
causing a constitutional deprivation.  See Monell v. Dep't of
Soc. Servs., 436 U.S. 658, 690-91 (1978); see also Long v. Cnty.
of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006).  Because no
respondeat superior liability exists under § 1983, a municipality
is liable only for injuries that arise from an official policy or
longstanding custom.  Monell, 436 U.S. at 694; City of Canton v.
Harris, 489 U.S. 378, 385 (1989).  A plaintiff must show "that a
[municipal] employee committed the alleged constitutional

14

violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346 (9th Cir. 1992) (per curiam) (citation omitted).

In addition, a plaintiff must allege facts demonstrating that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." <u>Id.</u>; <u>see also</u> <u>Thompson v. City of L.A.</u>, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are [sic] insufficient to establish custom."), <u>overruled on other grounds by</u> <u>Bull v. City & Cnty. of S.F.</u>, 595 F.3d 964, 981 (9th Cir. 2010) (en banc). "A custom can be shown or a policy can be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" <u>Pierce v. Cnty. of Orange</u>, 526 F.3d 1190, 1211 (9th Cir. 2008) (as amended) (quoting <u>Gillette</u>, 979 F.2d at 1349).

A plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. <u>See</u> <u>Harris</u>, 489 U.S. at 388. A plaintiff claiming failure to train must allege facts demonstrating the following:

15

(1) he was deprived of a constitutional right, (2) the
[municipality] had a training policy that "amounts to
deliberate indifference to the constitutional rights of
the persons with whom its police officers are likely to
come into contact," and (3) his constitutional injury
would not have happened had the [municipality] properly
trained those officers.

Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)
(citation and alterations omitted).

B.   Analysis

    1.   The Complaint does not state any Fourth Amendment
claim

Plaintiff's claims fail because he has not adequately
pleaded any Fourth Amendment injury, much less one that resulted
from a failure to train City librarians or any municipal policy,
custom, or practice. He admits that he was "ruminati[ng]"
"audibl[y]" in the library (Compl. at 6), "adjacent to a
partition-less children's section" (id. at 12), and insisted on
continuing to do so after a librarian had put him on notice that
he needed to stop (id. at 6). Regardless of who arrested
Plaintiff (see supra note 5), officers on the scene "talked to
the librarian," asked Plaintiff about his conduct, and warned him
that if he did not leave he would be arrested and escorted from
the building (see Compl. at 6). He repeatedly refused. (See id.
at 6-7.) Probable cause therefore existed to arrest him for
violating section 602.1(b), which makes it a misdemeanor to
interfere with the lawful business of a public agency and refuse
to leave the premises when asked. See Devenpeck, 543 U.S. at

16

153-54; <u>Arpin</u>, 261 F.3d at 924-25.

That Plaintiff was apparently cited for a violation of section 602(q), which does not appear to apply to his alleged conduct, does not destroy the existence of probable cause and does not invalidate his arrest. <u>See</u> <u>Devenpeck</u>, 543 U.S. at 153-54. Moreover, because probable cause existed, Plaintiff cannot state a constitutional claim based on his less-than-three-hour detention. <u>See</u> <u>Manuel</u>, 137 S. Ct. at 918 (valid probable-cause determination provides "constitutionally adequate justification" for detention before legal process has begun). It does not matter that the City Attorney apparently ultimately decided not to file charges. <u>See</u> <u>DeFillippo</u>, 443 U.S. at 36.

Thus, Plaintiff has not alleged any Fourth Amendment violation under any theory. Should he decide to pursue such a claim in an amended pleading, he must allege specific facts showing that he meets the standards set forth above in Section II.A.

2.  <u>The Complaint fails to state any *Monell* claim</u>

Plaintiff has named no individual Defendants and proceeds solely on a municipal-liability theory (<u>see</u> Compl. at 1, 4), apparently primarily based on a failure to train City librarians or other employees (<u>see</u> <u>id.</u> at 13). But as discussed above, he has not adequately pleaded any constitutional deprivation. <u>See</u> <u>City of L.A. v. Heller</u>, 475 U.S. 796, 799 (1986) (no <u>Monell</u> liability absent showing of constitutional injury); <u>Quintanilla</u> <u>v. City of Downey</u>, 84 F.3d 353, 355 (9th Cir. 1996) (same). Nor has he alleged facts showing that any Defendant's training policy amounted to deliberate indifference to his constitutional

17

rights,[13] or that more or different training would have prevented any constitutional violation.  Cf. Blankenhorn, 485 F.3d at 484.

Plaintiff also alleges that the library had a posted policy warning patrons that they could be arrested under Penal Code section 602.1(b) if they behaved disruptively, disobeyed library rules, or refused to leave when asked.  (See Compl. at 4, 7; see also id., Ex. B.)  One of those rules apparently prohibited patrons from talking on cell phones in the library.  (See Compl. at 6.)  He does not specifically allege that any of those rules or policies led to his arrest.  But even if he had, that could not have proximately caused him any Fourth Amendment deprivation because, as discussed above, Plaintiff has not adequately pleaded any such deprivation; indeed, he admits that he was talking out loud in the library and continued to do so after having been asked to stop.  (See id. at 6.)  Plaintiff nowhere alleges that section 602.1(b) (or for that matter section 602(q) or Municipal Code section 41.24(d)) is unconstitutional in any way, and no such infirmity is apparent to the Court.  Similar provisions allowing for disruptive individuals to be removed from public spaces have withstood constitutional challenge.  See, e.g., Hunt v. City of L.A., No. CV 12-7261 DSF (SHx), 2012 WL 12548355, at *3, *5-7 (C.D. Cal. Dec. 6, 2012) (upholding rules requiring "civility" and "decorum" against vagueness and overbreadth

---

[13]  Indeed, at one point Plaintiff characterizes the City's and library's training policy as "gross[ly] negligen[t]."  (Compl. at 4.)  That is not sufficient for § 1983 liability.  See Daniels v. Williams, 474 U.S. 327, 333 (1986) (injuries to life, liberty, or property inflicted by governmental negligence not addressed by Constitution).

challenges from plaintiff who had been ejected from City recreation-board meeting for disruptive behavior).[14]

Plaintiff therefore has not stated any municipal-liability claim for any Fourth Amendment violation.  Should he elect to pursue such claims in an amended pleading, he must allege specific facts showing that he was deprived of some constitutional right and that the deprivation was proximately caused by some municipal policy, custom, or practice.  See Monell, 436 U.S. at 694; Trevino, 99 F.3d at 918.  As Monell liability for a Fourth Amendment violation is apparently his only federal-law theory of relief, the Court defers screening of his state-law claims until he has adequately pleaded a federal cause of action.  See Herman Family Revocable Tr. v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001).[15]

---

[14]  Further, Plaintiff appears to contend that the library acted unlawfully because it violated the posted policy, not because the policy itself was flawed.  (See, e.g., Compl. at 8 (describing email to Feuer "as to what was transpiring at this rogue library"), 12-13 (librarian Carr acted "outside of her rights" because he was cited for violating § 602(q) rather than § 602.1(b)).)

[15]  The Court notes, however, that in bringing a state-law tort claim against a public entity or employee, a plaintiff must plead compliance with the California Tort Claims Act or the claim is subject to dismissal.  See State v. Super. Ct. (Bodde), 32 Cal. 4th 1234, 1239, 1245 (2004); Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  This requirement applies in federal court.  See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff's failure to allege compliance with the Tort Claims Act could lead to dismissal of his state-law tort claims.

**III. Plaintiff's Public-Records Requests Are Premature or Not Cognizable Under § 1983**

Plaintiff seeks "discovery" under FOIA and state public-records statutes. (See Compl. at 14.) To the extent his request is construed as seeking a discovery order from the Court, that request is denied as premature. If one of Plaintiff's complaints is ordered served and any Defendant files an answer, the Court may thereafter issue an order allowing discovery to begin.

If Plaintiff wishes to make a request under FOIA or the California Public Records Act, he may do so using the procedures described in those statutes and does not need the Court's permission. See generally 5 U.S.C. § 552; Cal. Gov't Code § 6253; see also U.S. Dep't of Justice, FOIA.gov, https://www.foia.gov (providing portal for users to create FOIA request online); Cal. Att'y Gen.'s Off., Summary of the California Public Records Act of 2004 (Aug. 2004), http://ag.ca.gov/publications/summary_public_records_act.pdf.

**********************

If Plaintiff desires to pursue his claims, he is ORDERED to file a first amended complaint within 28 days of the date of this order, remedying the deficiencies discussed above. The FAC should bear the docket number assigned to this case, be labeled "First Amended Complaint," and be complete in and of itself, without reference to the original Complaint or any other pleading, attachment, or document.

Plaintiff is advised that he may wish to seek help from one of the federal "pro se" clinics in this District. The clinics offer free on-site information and guidance to individuals who

20

are representing themselves (proceeding pro se) in federal civil actions. They are administered by nonprofit law firms, not by the Court. The clinic closest to Plaintiff is located in Suite 170 of the Edward R. Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012. It is open Mondays, Wednesdays, and Fridays, 9:30 a.m. to 12 p.m. and 2 to 4 p.m. Useful information is also available on the clinics' website, http://prose.cacd.uscourts.gov/los-angeles.

**Plaintiff is warned that if he fails to timely file a sufficient FAC, the Court may dismiss this action on the grounds set forth above or for failure to diligently prosecute.**[16]

DATED: <u>December 19, 2018</u>

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[16] If Plaintiff believes this order erroneously disposes of any of his claims, he may file objections with the district judge within 20 days of the date of the order. <u>See</u> <u>Bastidas v. Chappell</u>, 791 F.3d 1155, 1162 (9th Cir. 2015) ("When a magistrate judge believes she is issuing a nondispositive order, she may warn the litigants that, if they disagree and think the matter dispositive, they have the right to file an objection to that determination with the district judge.").